IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| PATTY LOU TYDINGS, | ) | Case No. 19-20889-drd-7 |
| | ) | |
| Debtor | ) | |

MEMORANDUM OPINION

Before this Court is the Trustee's Objections to Debtor's Claim of Exemption. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§1334(b) and 157(a) and (b). This is a core proceeding which this Court may hear and determine pursuant to 28 U.S.C. §§157(b)(2)(A) and (B). For the reasons set forth below, the Trustee's objections are sustained.

I. BACKGROUND

The following facts have been stipulated by the parties. Patty Lou Tydings (the "Debtor") filed her Chapter 7 petition on September 26, 2019. The Debtor's husband died on June 24, 2003, and as a result, the Debtor received surviving widow's benefits from the Social Security Administration. These social security benefits ("SS Benefits") fall within the purview of the federal social security exemption statute: 11 U.S.C. §407(a).

The deposits of the SS Benefits began on June 24, 2019, and were comprised of two payments of so-called "back pay" totaling $11,190.57. They were deposited in the Debtor's only bank account at the time, a checking account at First State

Community Bank (the "Account"). The Debtor's employer deposited her weekly wages directly into that same checking account. Thus, exempt social security money and non-exempt funds were commingled in the Account.

The balance in the Account prior to the deposit of the first SS Benefits was $518.27. During the three months leading up to the Debtor's bankruptcy filing, SS Benefits totaling $15,171.57 were deposited in the Account; deposits of the Debtor's wages and other miscellaneous funds into the Account totaled $6,670.38. The combined deposits during the relevant time period, therefore, totaled $21,841.95. Withdrawals from the Account during that same period totaled $13,461.07, leaving a balance of $8,939.15 on the Debtor's petition date. The Debtor used the withdrawn funds to pay general living expenses.

The Debtor filed an amended Schedule C claiming the entire balance in the Account, $8,939.15, as exempt pursuant to 42 U.S.C. §407. The Trustee agrees that social security benefits are exempt under Section 407, and that they do not automatically lose their exempt status simply because they are commingled with non-exempt funds. However, the Trustee asserts that the exemption only extends to those funds that are reasonably traceable to the SS Benefits. He proposes that the Court use the first-in first-out ("FIFO") method of tracing. Under that analysis, the Debtor would retain $3,981 of SS Benefits in the Account.

The Debtor contends that the Trustee bears the initial burden of production of evidence and the ultimate risk of nonpersuasion with regard to tracing the SS Benefits that were commingled with other funds. She also proposes that the Court adopt a tracing method called "Reconstructed Separate Bank Accounts" which creates the fiction that the Debtor placed the SS Benefits into an account separate from the account into which other income was deposited. Under that analysis, the Debtor would retain $8,767.50 in her SS Benefits account (and a balance of $171.65 in her general account). Finally, the Debtor argues that FIFO is unrelated to the tracing of commingled funds, and that using this method would be purely arbitrary.

II. DISCUSSION

In her initial response, the Debtor focuses on the burden of proof, arguing that the Trustee must prove that the disbursements made from the Account prior to the petition date were not made from non-exempt funds. The Trustee argues that he met his burden of proof by showing that both exempt funds (the SS Benefits) and non-exempt funds were commingled in the Account, and that the funds are not traceable to any one source. Therefore, he contends that he rebutted the presumption that the entire balance in the Account on the petition date was exempt.

The Debtor contends that *In re Danduran*, 657 F.3d 749 (8th Cir. 2011), is directly on point. However, as the Trustee points out, the facts are distinguishable. The debtor in *Danduran* sold real and personal property for one price to pay off an

3

existing mortgage. The remaining funds were deposited in an account which he claimed as exempt under a homestead statute. The trustee objected, claiming that a portion of the funds in the account were attributed to proceeds from the sale of personal property which were not exempt, and that entire amount was still in the account. The Eighth Circuit found that the trustee failed to meet his burden of proving that none of those proceeds were used to pay the mortgage. It also pointed out that the trustee failed to argue that only a portion of the exemption was allowed. Here, the Trustee *is* arguing that only a portion of the exemption should be allowed, not that the entire amount of the SS Benefits was in the Account on the Debtor's petition date. Therefore, the precise issue that is before this Court was not decided by *Danduran*.

At this point, the parties have presented their evidence and have stipulated to the facts. The issue presented is a legal question, and the record is before the Court. Therefore, the Court need not decide the issue regarding the burden of proof.

The Social Security exemption statute provides that "none of the money paid or payable … under this subchapter shall be subject to execution, levy, attachment, garnishment, of other legal process, or to the operation of any bankruptcy or insolvency law." 11 U.S.C. §407(a). The SSB clearly fall within the protection of this statute. (The Trustee does not dispute this.)

Exempt funds held by a debtor in a bank account with other non-exempt funds remain exempt provided that the funds are reasonably traceable to their exempt source. *In re Wood*, 459 B.R. 263, 267 (Bankr. S.D. Ohio 2011); *In re Moore*, 214 B.R. 628, 631 (Bankr. D. Kan. 1997). The concept of tracing commingled funds is "an equitable substitute for the impossibility of specific identification." *United States v. Henshaw*, 388 F. 3d 738, 741 (10th Cir. 2004)(citation omitted).

Courts have typically employed three mechanisms for determining the amount of exempt funds existing on the petition date when they have been commingled with non-exempt funds: the lowest intermediate balance test ("LIBT"), the percentage (or pro-rata) approach, and FIFO. *In re Marve*, 484 B.R. 735, 737-39 (Bankr. N.D. Ind. 2013); *In re Lichtenberger*, 337 B.R. 322, 324 (Bankr. C.D. Ill. 2006)(citing last-in, first-out approach in addition to the other three most common methods). Courts must determine on a case-by-case basis the tracing method that is best suited to achieve a fair and equitable result on the facts before them. *Henshaw*, 388 F. 3d at 741. In making that determination, the court should consider the general rule that exemptions are to be construed in favor of the debtor. *Wood*, 459 B.R. at 269. *But see Marve*, 484 B.R. at 741 ("While it is true that exemptions are to be literally construed in favor of the debtor, in this court's view that principle ceases to be operative when exempt funds are co-mingled with non-exempt funds."). At the same time, the interests of the debtor in preserving an exemption must be balanced against

the interest of the estate in recovering non-exempt funds for the benefit of creditors. *In re King*, 508 B.R. 71, 81 (Bankr. N.D. Ind. 2014).

The following is a simplified explanation of each of the most common tracing methods. The LIBT is typically applied where a debtor commingles his own funds with funds he is holding in trust for another. If the account balance drops to zero, the trust funds are lost and subsequent deposits are considered non-trust funds. If the account drops to a balance less than the amount of trust funds, but greater than zero, the trust funds are limited to the lowest intermediate balance in the account. Thus, this test is based on the fiction that the debtor would withdraw the non-trust funds first, retaining as much as possible of the trust funds in the account. *Marve*, 484 B.R. at 738 (citations omitted).

The percentage approach requires the determination of the exempt funds to the account total when the deposit is made. That percentage is then applied to the disputed funds (*i.e.*, the balance in the account on the petition date) to determine the portion of exempt funds and non-exempt funds in the account. *In re Ross*, 2012 WL 3817792 (Bankr. S.D. Ind. Sept. 4, 2012). This method assumes that no intermediate deposits are made between the initial deposit of the exempt funds and the petition date.

FIFO is a standard accounting method. The initial fact which must be established is the balance in the account immediately preceding the deposit of the

exempt funds. *Marve*, 484 B.R. at 741. From there, FIFO assumes that the first funds deposited in a commingled account are also the first funds withdrawn from that account. *In re Christensen*, 149 P. 3d 40, 50 (Nev. 2006).

In researching the cases in which it was necessary for courts to choose a method to trace exempt funds, the Court noted several trends. The lowest intermediate balance approach is used most often when tracing in the context of a conversion or a trust. *See, e.g., United States v. Lowrance*, 2002 WL 31987131 (N.D. Okla. Oct. 17, 2002); *In re JD Services, Inc.*, 284 B.R. 292 (Bankr. D. Utah 2002)(constructive trust). The percentage method is used most often when the exempt funds were deposited in a single payment, and the debtor made no deposits into the commingled account between the deposit of the exempt funds and the petition date. *See, e.g., In re Belmont*, 2015 WL 7717203 (Bankr. M.D. Fla. Nov. 24, 2015); *In re Wharton-Price*, 2015 WL 4230856 (Bankr. M.D. Fla. July 6, 2015); *King,* 508 B.R. at 80 (the percentage approach is of limited use where there are intervening deposits after the exempt funds are deposited).

As pointed out by the Trustee, a significant number of courts have utilized FIFO as a reasonable and universally-recognized framework for tracing commingled funds. *See, e.g., Marve,* 484 B.R. at 741; *Moore,* 214 B.R. at 631; *Christensen,* 149 P. 3d at 51. The FIFO method appears to make the most sense in cases, such as this one under consideration, in which several deposits were made between the time the

7

initial exempt funds were deposited into the commingled account and the debtor's petition date. *See, e.g.*, *Lichtenberger*, 337 B.R. at 323.

After carefully considering the cases utilizing the various tracing methods and the facts underlying the courts' decisions, this Court finds that FIFO is the most appropriate method to reasonably trace the SS Benefits in the Account and calculate the amount of the Debtor's exemption. There is no support in the caselaw for utilizing the Debtor's proposed tracing method. Furthermore, using reconstructed bank accounts as a framework gives the Debtor the benefit of having segregated the SS Benefits from non-exempt funds, something she could have done, but did not do.

Included in the record is a copy of the Debtor's bank statement (Respondent's Exhibit A) covering the relevant time period. The parties have stipulated to its admissibility. The Trustee posits that applying FIFO would result in a presumption that $4,958.14 of the Account balance as of the Debtor's petition date was not exempt. The Debtor does not contest this computation. Therefore, the amount of $3,981 represents SS Benefits that the Debtor can retain as exempt.

### III. CONCLUSION

It is undisputed that the Debtor's exempt SS Benefits were commingled with non-exempt funds in the Debtor's Account. It is well-established, however, that exempt funds are not transformed into non-exempt funds simply because they are commingled, provided that they are reasonably traceable to their exempt source.

The Court concludes that the Trustee's proposed method of tracing, FIFO, is the best approach under the circumstances.  The parties have agreed that a FIFO computation will result in an SS Benefits exemption of $3,981.

The Trustee's objections to the Debtor's claimed exemption are hereby sustained.

Dated: March 27, 2020                              /s/Dennis R. Dow
                                                                    Honorable Dennis R. Dow
                                                                    United States Bankruptcy Court